UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:94-cr-126-MOC-8

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **Vs.** | ) | ORDER |
| | ) | |
| | ) | |
| **ANDRE WILLIS,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 536). The Government has responded in opposition to the motion. (Doc. No. 542). Defendant then filed a reply to the Government's response. (Doc. No. 545).

## I. BACKGROUND

On December 19, 1995, Defendant pled guilty, in the underlying criminal action in this Court, to conspiracy to distribute cocaine base and possession of a firearm by a convicted felon. (Doc. No. 243). Defendant had belonged to a violent drug trafficking organization with at least 15 members. (Doc. No. 539 at 5-6). Defendant led a group of three, street-level dealers who sold cocaine, often within 1,000 feet of restricted areas, including schools and playgrounds. (Id.). Defendant sold 12.72 grams of cocaine base to an undercover officer. (Id.). Upon learning the officer's identity, Defendant attempted to flee in his car, ultimately causing a car accident and severely injuring an innocent bystander. (Id. at 8). At the drug transaction, Defendant possessed a Beretta 9mm semi-automatic pistol loaded with 12 rounds of 9mm ammunition. (Id. at 6). Defendant was ultimately responsible for distributing over 500 grams of cocaine base. (Id.). This Court sentenced Defendant to a total term of 240 months of imprisonment.

Following his release from prison, and while on supervised release, Defendant was convicted in the Eastern District of North Carolina of distributing cocaine and sentenced to 60 months of imprisonment. (United States v. Willis, 5-15-cr-312-H, Doc. No. 40 ("EDNC case"). Defendant sold cocaine and cocaine base to confidential informants between June and August 2015. (Id., Doc. No. 37 at 3). Upon a search of Defendant's residence, investigators located $1,606 in U.S. currency, 56 grams of cocaine base, a revolver, scales, and baggies. (Id.). Defendant admitted to selling drugs, converting cocaine to cocaine base, and having others sell drugs for him. (Id. at 3-4). In total, Defendant distributed or possessed with intent to distribute 1,197.504 grams of cocaine base. (Id. at 4). Defendant also admitted to being a leader in the drug trafficking organization. (Id.).

On May 10, 2016, Defendant was found guilty in the instant case of a supervised release violation for his cocaine distribution conviction in the EDNC case and for unauthorized travel. (Doc. No. 519). This Court sentenced Defendant to 30 months imprisonment, to be served concurrently to the sentence imposed in the EDNC case. (Id.).

On July 30, 2020, while incarcerated at FDC Philadelphia, Defendant, through counsel, submitted an administrative request to the warden of FDC Philadelphia requesting compassionate release and/or home confinement based on his health issues and the risks posed by the COVID-19 virus. (Doc. No. 536-4). On August 27, 2020, the warden denied Defendant's request because Defendant did not meet the necessary criteria for release, namely his pattern risk score. (Doc. No. 542, Attachment A). On August 31, 2020, Defendant filed the instant motion for compassionate release. (Doc. No. 536). He requests immediate release from imprisonment and, alternatively, he requests supervised release or home confinement. (Id. at 13). Defendant claims to have numerous health issues and ailments—most notably obesity, diabetes, and hypertension—that make him more susceptible to COVID-19 complications. (Id.

at 8). He also notes his age, 61, as a factor. Defendant is projected to be released on December 30, 2021. However, his full term does not expire until May 13, 2022. As to Defendant's supervised release violation, for which he is currently incarcerated and requests relief, Defendant has only served 34.4% of his term of imprisonment.

## II. DISCUSSION

### A. Sentence Reduction

The relevant part of the compassionate release statute permits this Court "after considering the factors set forth in § 3553(a) to the extent that they are applicable" to reduce Defendant's sentence only if it finds that (1) "extraordinary and compelling reasons warrant such a reduction"; "and" (2) "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable "policy statement" appears in section 1B1.13 of the Sentencing Guidelines Manual. That section and its commentary describe the "circumstances" under which "extraordinary and compelling reasons exist." U.S.S.G. § 1B1.13 & cmt. (n.1). First, the defendant must not be "a danger to the safety of any other person or to the community." (Id.). Second, one of four specific circumstances must exist involving, for example, the medical condition of the defendant, his age, his family circumstances, or reasons "determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13, cmt. (n.1). One of these circumstances requires that the defendant suffer from "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. (n.1(A)(ii)(I).

A generalized risk of contracting COVID-19 is not an extraordinary and compelling reason warranting early release. As the Third Circuit reasoned in United States v. Raia, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone

cannot independently justify compassionate release." 954 F.3d 594, 597 (3d Cir. 2020). If it did, every inmate would have a justification for compassionate release. That is, "speculation as to whether COVID-19 will spread through Defendant's detention facility…, whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release." United States v. Shah, Case No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying compassionate release where defendant claimed diabetes and hypertension, but facility had no cases); see e.g., United States v. Fry, No. 11-141(4), 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) ("to merit such compassionate release, Fry must show more than a mere speculation of the possibility of contracting the virus" as "unsubstantiated fears regarding COVID-19 are simply insufficient to warrant" compassionate release). This remains true, notwithstanding the fact that Philadelphia FDC has had and continues to have COVID-19 cases among the staff and prisoners. Accord United States v. Platt, No. 18cr195, 2020 WL 3839847, at *3 (D. Colo. July 8, 2020); United States v. Pichardo, 17-cr-512, 2020 WL 3819602, at *2 (S.D.N.Y. July 8, 2020).

Here, Defendant's alleged medical conditions are specific COVID-19 risk factors. Therefore, Defendant's individual circumstances likely demonstrate a "serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13, cmt. n.1(A). On June 25, 2020, the CDC published a revised list of risk factors for an adverse outcome from COVID-19.[1] According to this list, obesity and type 2 diabetes mellitus are conditions that create an increased risk of severe illness from COVID-19. (Id.). Further, the CDC lists hypertension or high blood pressure as a condition that "might" increase the risk of

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html

severe illness from COVID-19. (Id.). According to BOP medical records, Defendant appears to receive medical treatment for type 2 diabetes mellitus and hypertension. Thus, it appears that the Defendant's health conditions, as risk factors for COVID-19, meet Defendant's initial burden for compassionate release under one prong of the statute.

Nevertheless, under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020). Defendant would pose a significant danger to public safety if released based on the seriousness of his crimes, his recidivism, and his lack of respect for the law. This Court rejects a sentence reduction on those bases. Indeed, courts have routinely rejected compassionate release motions by defendants with severe health conditions related to COVID-19—which could constitute "extraordinary and compelling reasons" for release—based on the 3553(a) factors for similar offense conduct. See United States v. Levario, No. 2:12cr399, 2020 WL 3256918 (E.D. Cal. June 16, 2020) (inmate at Oakdale is vulnerable, but denied due to violent participation in drug gang); United States v. Miranda, No. 3:16-cr-128, 2020 WL 2124604 (D. Conn. May 5, 2020) (55-year-old has diabetes; has served 54 months of 74-month term for drug crime; denied in light of history of drug crimes and threatened violence). Moreover, courts have also denied relief where, as here, a defendant committed the instant drug offense while on supervised release for a prior federal drug offense. United States v. Wilson, Case No. CR418-031, 2020 WL 4450953, at *4 (S.D. Ga. Aug. 3, 2020) see also United States v. Vasquez, No. 11-cr-389(SHS), 2020 WL 5038006 (S.D.N.Y. Aug. 26, 2020) (defendant suffers from diabetes and other serious conditions, and has served 63% of 180-month sentence; relief is denied because he committed serious drug crimes while on parole for previous drug offenses). In these cases, as here,

career drug traffickers' serious health conditions did not merit release because of the threat they still posed to the community.

Defendant is a career trafficker of cocaine and cocaine base, with an operation spanning decades, a leadership role in the trafficking operations, and multiple kilograms of cocaine and cocaine base attributable to his trafficking organizations. In support of his drug trafficking, Defendant possessed multiple firearms. Defendant is a recidivist, returning to his cocaine base trafficking trade only a short while after being released from prison on the instant case for trafficking cocaine base. Indeed, Defendant's willingness to immediately return to selling cocaine base and possessing firearms while on supervised release evidences a disregard for the terms and conditions set by this Court upon his release from a lengthy drug trafficking sentence.

In addition, Defendant has a lengthy and troubling criminal history, including convictions for: breaking and entering (three counts – 1977); breaking and entering (1978); robbery with a dangerous weapon (1981); and possession with intent to sell and deliver cocaine (1991). Moreover, during his term of incarceration, Defendant has incurred five infractions for: interfering with staff, fighting with another person, disruptive conduct, refusing to obey an order, and assaulting without serious injury. (EDNC Case Doc. No. 37 at 7). Defendant's course of conduct over several decades demonstrates Defendant's lack of respect for the law and his position as a dangerous recidivist. There can be little doubt that the public needs to be protected from further crimes by Defendant.

Given the above, and the remaining § 3553(a) factors under consideration, Defendant is clearly a danger to the safety of the community and the motion is denied on that basis.

**B. Home Confinement**

Defendant has also asked in the alternative that this Court order BOP to place him in home confinement. Once a sentence is imposed, BOP is solely responsible for determining an inmate's place of incarceration. See 18 U.S.C. § 3621(b); Moore v. United States Att'y Gen., 473 F.2d 1375,

1376 (5th Cir. 1973) (per curiam). A court has no authority to designate a prisoner's place of incarceration. United States v. Voda, 994 F.2d 149, 151-52 (5th Cir. 1993). Because Defendant's request for home confinement alters only the place of incarceration, not the actual term of incarceration, only BOP may grant or deny his request.

Moreover, there is no constitutional or statutory authority that allows the Court to order home confinement. A prisoner has no constitutional right to confinement in any particular place, including in home confinement. See Sandin v. Conner, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."). Following the imposition of a sentence, the Court has limited jurisdiction to correct or modify that sentence absent specific circumstances enumerated by Congress in 18 U.S.C. § 3582. United States v. Garcia, 606 F.3d 209, 212 n.5 (5th Cir. 2010) (per curiam). Section 3582(c) contemplates only a reduction in sentence. See § 3582(c). But Defendant's request to serve the rest of his term in home confinement, as opposed to prison, works no reduction to his sentence. Home confinement merely permits the inmate to serve out his term of imprisonment at home. Defendant's request for such relief therefore falls outside § 3582(c)'s limited grant of authority to this Court to modify a sentence post-conviction. Because § 3582(c) deprives the Court of jurisdiction to grant home confinement and because Defendant offers no other statutory authority to support his request for such relief, this Court has no authority to act on his request for such relief in this forum.[2]

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Compassionate

[2] If a court grants a sentence reduction, it may "impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A). In imposing a term of supervised release, the court may impose a period of home confinement as a condition of supervised release, provided that the court finds that home confinement is a "substitute for imprisonment." USSG § 5F1.2; see 18 U.S.C. § 3583(d). Alternatively, a court may consider modifying an existing term of supervised release to add a period of home confinement, consistent with USSG § 5F1.2. See § 3583(e)(2).

Release/Reduction of Sentence, (Doc. No. 536), is **DENIED**.

Signed: October 19, 2020

Max O. Cogburn Jr.
United States District Judge